UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:23-CV-00092-JHM

GREGORY D. SOBIN   PLAINTIFF

v.

LT. LANHAM, *et al.*   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Lieutenant Lanham and Sergeant Deno. (DN 33). Plaintiff Gregory D. Sobin filed a response to the motion (DN 35), and Defendants filed a reply. (DN 37). For the following reasons, the motion for summary judgment will be granted.

**I**.

Plaintiff, a pretrial detainee at the Henderson County Detention Center (HCDC) at the time he commenced this action, filed the original complaint on July 26, 2023. Plaintiff, proceeding *pro se*, commenced this 42 U.S.C. § 1983 action against HCDC Deputy Jailers Lanham and Deno alleging violations of his First and Fourteenth Amendment rights. (DN 1).

Plaintiff's complaint alleges that, upon being booked into HCDC on or about June 26, 2023, Lanham warned Plaintiff that if "he files any type of complaints, grievances, and/or any civil litigations" against Lanham or his officers, that Lanham would "arrange that [Plaintiff] will be hurt." (DN 1, PageID.5). Plaintiff further alleges that on Thursday, July 13, 2023, Deno "opened Plaintiff's cell 503 in the isolation (segregation) unit and had placed a state charged inmate into the federal charged Plaintiff's cell." (*Id*., PageID.6). According to Plaintiff, "not only are state charged defendants not to be housed in the same cell as a federally charged offender, this particular state charged offender had made numerous threatening references in the presence of both this

plaintiff and [Deno] . . . ." (*Id*.). Specifically, "the state charged inmate had repeatedly stated that 'there was going to be a problem, that he was not going to be housed in a cell with anyone wearing yellow.'" (*Id*.). Plaintiff explains that "federal charged offenders wear yellow uniforms." (*Id*.).

Plaintiff alleges Lanham and Deno ignored these warnings, and within several minutes of entering cell 503, the state inmate "struck" and "continued to beat" Plaintiff about the head and face, "causing great pain and profuse bleeding." (*Id*., PageID.7). Plaintiff states that he lost consciousness during the assault and was transported by ambulance to an area hospital to be treated for facial fractures. (*Id*., PageID.7-8). Following Plaintiff's return to HCDC from the hospital several hours later, Lanham allegedly told Plaintiff, "I warned you an[d] as you can see I can make things happen, see my hands are clean." (*Id*., PageID.8).

Plaintiff alleges that Defendants' actions constitute violations of his First Amendment right to be free from retaliation and Fourteenth Amendment right to be protected while in custody. (*Id*., PageID.6-7). Upon initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims to proceed for further development against Defendants in their individual capacities. (DN 6, PageID.1-2).

## II.

### A.

Defendants now move for summary judgment on grounds that Plaintiff fails to establish the requisite elements of both his First Amendment retaliation claim and his Fourteenth Amendment failure-to-protect claim. (DN 33-1, PageID.122-129).

In support of their motion, Defendants submit HCDC incident reports and disciplinary hearing reports pertaining to Plaintiff and his attacker, sworn affidavits by Lanham and Deno, and

2

an Off-Site Medical Referral Form and Inmate Medical Clearance Report relating to Plaintiff's medical treatment following the attack. (DNs 33-2 through 33-10).

HCDC disciplinary hearing records show that on July 10, 2023, Plaintiff was involved in an altercation with another inmate, which resulted in a disciplinary hearing and sentence to 14 days in administrative segregation. (DN 33-3). The disciplinary records also show that on July 11, 2023, Nicholas Moore, a state inmate and non-party to this action, was sentenced to administrative segregation stemming from an unrelated disciplinary hearing. (DN 33-5).

In his sworn affidavit, Lanham asserts that HCDC has 16 administrative segregation cells. On July 13, 2023, only two segregation cells were available and not at full capacity. (DN 33-6, PageID.135). Of the two available cells, one housed a sex offender whose classification mandated that he be housed alone, and the other, cell 503, housed Plaintiff. (*Id.*). On July 13, 2023, Lanham instructed Deno to transfer Moore to cell 503 as it was the only available cell. (*Id.*). Shortly after transferring Moore to cell 503, Deno called Lanham for assistance with Moore. (*Id.*). Moore stated that he was uncomfortable being housed in cell 503 but would not provide a reason. (*Id.*). Moore affirmed to Lanham that he would not hurt himself or anyone else, and he was then placed in cell 503. (*Id.*, PageID.136).

Lanham avers that Plaintiff was not mentioned during his interaction with Moore, that Plaintiff and Moore were not designated as "keep aparts," and that there was no indication that the two inmates knew each other. (*Id.*). At that time, Moore had not been involved in any altercations with other inmates. (*Id.*). Approximately 20-30 minutes after the transfer, Moore assaulted Plaintiff. (*Id.*). Moore was removed from the cell, and Plaintiff was transferred to Deaconess Hospital for treatment. (*Id.*). Lanham also avers that cell 503 was the only cell that could accommodate Moore and that he did not believe that Moore would put Plaintiff at a substantial

risk of serious harm. (*Id*., PageID.136-137). Lanham states that he did not tell Plaintiff that he would arrange for him to be hurt if he filed any complaints or grievances while at HCDC. (*Id*., PageID.137).

By sworn affidavit, Deno states that on July 13, 2023, he was instructed by his supervising officer, Lanham, to transfer Moore to administrative segregation cell 503. (DN 33-7, PageID.138). Moore told Deno that he was uncomfortable being housed in cell 503 but would not give a reason why. Deno called Lanham and requested assistance on how to handle this issue. (*Id*.). Lanham asked Moore why he felt uncomfortable, but he would not provide a reason. (*Id*.). Moore stated that he was not going to hurt himself or anyone else, and the officers proceeded to place Moore into cell 503 with Plaintiff. (*Id*.). Deno asserts that Plaintiff was never mentioned during his conversation with Moore, that the two inmates were not designated as "keep aparts," that there was no indication the two inmates knew each another, and, at the time, that Moore had not been involved in any altercations with other inmates. (*Id*.). According to Deno, it did not appear that placing Moore into cell 503 put Plaintiff at a substantial risk of serious harm. (*Id*.).

Medical documentation reveals that on July 13, 2023, Plaintiff was treated at Deaconess Hospital Emergency Department for a head injury. (DNs 33-10, PageID.143-147).

**B.**

In Plaintiff's response to the motion for summary judgment, he controverts certain of Defendants' propounded facts as they relate to statements made by Lanham and Moore, which he believes create a genuine dispute for trial. (DN 35).

To his response, Plaintiff attaches a sworn affidavit, in which he avers that he had an "explosive and heated confrontation" with Lanham during Plaintiff's booking into HCDC. Lanham allegedly told Plaintiff that "[Lanham] was well aware of my propensity to file

4

complaints, grievances, and lawsuits (civil litigations), and if I file any such complaints, grievances, and/or lawsuits against him I will be hurt and [Lanham's] hands will be clean." (DN 35-1, PageID.172). As a result of Lanham's "alarming and threatening statement," Plaintiff asserts that he "levelled a complaint verbally to [Lanham's] superior Major Payne in order to report the blatant threat, and nothing was done." (*Id.*). Plaintiff states that upon his return from the hospital, Lanham approached Plaintiff and "laughingly informed [Plaintiff] that his hands remain clean . . . ." (DN 35-1, PageID.176). Plaintiff states that he reported Lanham's post-assault remarks in a subsequent grievance. (*Id.*).

Plaintiff avers that on July 13, 2023, "Lanham intentionally had [Moore] placed into my cell (503) [to] execute his pre-arranged and threatened attack to hurt me . . . following my earlier complaint to Major Payne at HCDC." (*Id.,* PageID.173). According to Plaintiff, administrative segregation cell 503 was a "single man cell, designated to house one inmate separately," where Plaintiff was sentenced to 14 days of segregation following a disciplinary infraction. (*Id.*). Plaintiff also alleges that a protocol exists at HCDC to keep apart federal and state inmates. (*Id.*, PageID.173-174). "Keep aparts is a label that keeps apart both county/state inmates in green uniforms from federal inmates who[ ] wear yellow uniforms, as well as documenting those inmates whom have had previous altercations or serious problems between one another." (*Id.*, PageID.174). Prior to the attack, Moore "specifically stated to both the Sgt. Deno and Lt. Lanham 'that there was going to in fact be a problem placing him into cell (503) with an inmate wearing yellow.'" (*Id.*). According to Plaintiff's affidavit, Moore repeated these warnings to both officers prior to attacking him. (*Id.,* PageID.175-176). Plaintiff states that "within mere minutes of slamming shut the door to cell (503), I was literally killed by this county/state inmate in green [Moore]."

5

Plaintiff concludes that "Lanham had made it very clear that he had orchestrated this attack . . . and had placed that county/state inmate wearing green into my cell (503) in order to carry out his threat to hurt me if I filed any complaints, grievances, or civil litigations against him and showing me afterwards his hands remained clean." (*Id*., PageID.177).

**C.**

In their reply and supplemental reply (DNs 37, 39), Defendants argue that Plaintiff has not submitted evidence sufficient to establish the requisite elements of either of his constitutional claims. (DN 37, PageID.182-185). With respect to Plaintiff's retaliation claim, Defendants submit Plaintiff's booking report (DN 37-1), and Lanham's employee timesheet from HCDC (DN 37-2), to establish that Lanham did not threaten Plaintiff during booking because Lanham was not working at the time Plaintiff was booked into HCDC. They additionally submit a sworn affidavit by William Payne, Major at HCDC (DN 37-3), which states that no verbal complaint was lodged by Plaintiff to Major Payne. (DN 37, PageID.182-183). Defendants also argue that Plaintiff's affidavit runs afoul of Fed. R. Civ. P. 56(c)(4) in that it is replete with improper allegations that are not based on personal knowledge and about which Plaintiff is not competent to testify, and therefore, cannot be used to create a genuine issue of material fact to withstand summary judgment. (DN 39, PageID.194-195).

**III.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

## IV.

### A.

Plaintiff claims that the assault by Moore in cell 503 was orchestrated by Lanham pursuant to his previous threats against Plaintiff and thereby constitutes a violation of his First Amendment right to be free from retaliation. (DN 1, PageID.6).

Defendants seek summary judgment on the basis that Plaintiff fails establish the requisite elements to state a retaliation claim under the First Amendment. (DN 33-1, PageID.122-126).

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. As set forth by the Sixth Circuit in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*):

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394. In a claim for retaliation, "[t]he plaintiff has the burden of proof on all three elements." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). If the plaintiff establishes "'his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant,' who may prevail on summary judgment by showing that 'he would have taken the same action in the absence of the protected activity.'" *Vaughn v. Underwood*, No. 3:20-CV-P317-RGJ, 2022 WL 4693908, at *2 (W.D. Ky. Sept. 30, 2022) (quoting *Thaddeus-X*, 175 F.3d at 399).

Plaintiff does not identify any protected conduct in his complaint. (DN 1). However, in a sworn affidavit, submitted in response to Defendant's motion for summary judgment, Plaintiff claims that he engaged in protected conduct by "levelling a complaint verbally to . . . Major Payne in order to report this blatant threat, and nothing was done." (DN 35-1, PageID.172). Defendants, in turn, submit a sworn affidavit from Payne, who states that "[p]art of my duties at HCDC is receiving and investigating complaints made by inmates against HCDC staff members . . . . At no time during [Plaintiff's] incarceration have I received a complaint of an alleged threat by Lt. Lanham." (DN 37-3, PageID.189).

The Sixth Circuit has recognized that verbal complaints can constitute protected conduct. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("An inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral.") (citation omitted); *accord, Brown v. Gray*, No. 21-3386, 2022 WL 961246, at *3 (6th Cir. Mar. 28, 2022). The parties' differing versions of events relating to Plaintiff's verbal complaint presents a factual dispute as to whether Plaintiff engaged in protected conduct. The Court therefore assumes, for purposes of this motion, that Plaintiff has satisfied the first element of a retaliation claim. *See Reed-Bey v. Lewis*, No. 13-10168, 2017 WL 9471683, at *5 (E.D. Mich. Aug. 28, 2017), *report and recommendation adopted*, No. 13-10168, 2017 WL 4296599 (E.D. Mich. Sept. 28, 2017) ("Thus, for purposes of summary judgment, the only question as to this element is whether Plaintiff in fact complained to the Deputy Warden. He says that he did, and although Lewis denies any knowledge of this complaint, she offers nothing to rebut the Plaintiff's factual claim. Plaintiff has satisfied the first element of a retaliation claim.").

Plaintiff alleges that Defendants acted adversely by assigning Moore, a state inmate, to a cell with Plaintiff, a federal inmate, for the purpose of inflicting harm on Plaintiff. (DN 1, PageID.6). Defendants, in turn, assert that Plaintiff cannot establish an adverse action based on Moore's cell assignment. (DN 33-1, PageID.124). Defendants cite to *Davis v. Davidson Cnty. Sheriff's Off.*, No. 3:22-CV-00572, 2023 WL 3656865 (M.D. Tenn. May 5, 2023), *Parker v. Reddin*, No. 20-1106, 2020 WL 8415084 (6th Cir. Aug. 5, 2020), and *LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013), for the proposition that a plaintiff-inmate's transfer between cells is generally insufficient to constitute an adverse action absent additional negative consequences or extraordinary circumstances. Examples of extraordinary circumstances are when the transfer is coupled with an increase in security level, a restriction on the prisoner's freedom of movement

within the institution, or being placed among mentally ill inmates. *Parker*, 2020 WL 8415084, at *4 (citations omitted). "Although defendants are not responsible for adverse actions that they do not cause, they are responsible for 'those consequences that inextricably follow from [their] alleged retaliatory conduct[.]'" *LaFountain*, 716 F.3d at 949 (quoting *Siggers–El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005)).

Plaintiff states that, when Moore was being transferred, Moore told Deno that "there was going to be a problem placing him into cell (503) with an inmate wearing yellow." (DN 35-1, PageID.174). According to Plaintiff, state inmates, who wear green uniforms, are designated "keep aparts" from federal inmates, who wear yellow uniforms. (*Id.*, PageID.173). To the extent Plaintiff claims that Lanham placed Moore, a state inmate, in cell 503 for the purpose of assaulting Plaintiff, a federal inmate, Plaintiff cites to no policy—official or *de facto*—showing that state and federal inmates must remain segregated at HCDC. Assuming the truth of Plaintiff's allegation that Moore stated there would be a problem if he were placed in a cell with an inmate wearing yellow, this alone is insufficient to create a genuine dispute as to the adverse action element because the remark was not made until after the transfer had been initiated. There is otherwise no evidence of record that state and federal offenders were designated as "keep aparts" or that violence would inevitably ensue with a state and federal inmate housed in the same cell. The inference therefore cannot be raised that there was an inherent, foreseeable risk in assigning a state inmate to a cell with a federal inmate. Neither "conclusory allegations" nor "speculation" nor "unsubstantiated assertions" will suffice to defeat a motion for summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017).

In contrast, Defendants have produced evidence that, at the time of Moore's transfer, there were no foreseeable, negative consequences that could give rise to an adverse action that would

10

deter a person of ordinary firmness from exercise of a constitutional right. Plaintiff does not dispute that Moore was sentenced to a period of administrative segregation shortly after Plaintiff began serving his own administrative segregation sentence on an unrelated infraction. He does not dispute that, of the two cells that were not at capacity, Plaintiff's cell (503) was the only cell available to house Moore. Finally, Plaintiff does not dispute that Moore had no history of assaulting other inmates and that he was not designated as a keep apart from Plaintiff. Plaintiff does not allege that he knew Moore prior to the assault.

In sum, Plaintiff presents no evidence that the physical attack by Moore was a foreseeable, negative consequence resulting from the cell transfer beyond conclusory assertions that state and federal inmates cannot be housed together. Accordingly, Plaintiff cannot satisfy the adverse action element of his claim. *See, e.g.*, *Alexander v. Galzetta*, No. 2:16-CV-13293, 2018 WL 3249580, at \*14 (E.D. Mich. Feb. 26, 2018), *report and recommendation adopted in part, rejected in part sub nom. Alexander v. Calzetta*, No. 16-CV-13293, 2018 WL 1556233 (E.D. Mich. Mar. 30, 2018) (prisoner's assault at facility following transfer was not a foreseeable, negative consequence).

Even if the Court were to find that Defendants acted against Plaintiff adversely, his retaliation claim nonetheless fails because Plaintiff cannot establish a causal connection between his protected conduct and the attack by Moore.

"To establish the causal connection required by the third element, the defendants' retaliatory motive 'must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at \*5 (6th Cir. July 17, 2023) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019), other citations omitted). The Sixth Circuit has observed that "retaliation rarely can be supported with direct evidence of intent . . . . But conclusory allegations of retaliatory motive

11

unsupported by material facts will not be sufficient to state . . . a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotations and citations omitted).

Plaintiff proffers Lanham's statements that he would arrange for Plaintiff to be hurt if Plaintiff filed any complaints, grievances, or lawsuits, as proof of retaliatory motivation to place Moore into Plaintiff's cell for the purpose of attacking him. (DN 35-1, PageID.172). Defendants assert that Lanham did not threaten Plaintiff during booking because he was not present when Plaintiff was booked into HCDC. (DN 39, PageID.194). To that end, Defendants produce Lanham's timesheet for the week of June 18, 2023, showing that Lanham's shift at HCDC ended at 3:30pm on June 26, 2023 (DN 37-2), and Plaintiff's booking report indicating that he was processed by a different officer at 7:47pm. (DN 37-1). Plaintiff's complaint alleges, and his affidavit maintains that Lanham made the retaliatory remarks to him. (DN 1, PageID.5 DN 35-1, PageID.172). Drawing all reasonable inferences against the movant, Plaintiff's averment, if true, could present to the Court some proof to establish an inference of retaliatory motivation to place Moore into Plaintiff's cell for the purpose of attacking him.

Fatal to Plaintiff's claim, however, is that there is no evidence that Lanham was actually aware of Plaintiff's protected conduct, as it was Lanham's remark that prompted Plaintiff's complaint in the first instance. And Plaintiff provides no details beyond that a complaint was made to Major Payne at an unspecified time, and that Payne failed to investigate it. (DN 35-1, PageID.172-173). *See Thaddeus-X*, 175 F.3d at 387 n.3 ("[T]he defendant must have known about the protected activity in order for it to have motivated the adverse action."); *accord, Spearman*, 2023 WL 7000971, at *5 (upholding grant of summary judgment in favor of the defendants where

the plaintiff presented no evidence that either defendant was aware of a grievance when they initiated the alleged retaliatory transfer).[1]

Alternatively, Defendants have submitted evidence that, absent any retaliatory motive, they would have taken the action of transferring Moore into cell 503. To that end, they submit evidence showing that on July 13, 2023, Plaintiff was being held in administrative segregation for 14 days pursuant to a disciplinary hearing. (DN 33-3). Moore, who was the subject of an unrelated disciplinary hearing, was sentenced to 21 days in administrative segregation around the same time. (DN 33-5). According to Lanham's affidavit, only two of HCDC's 16 administrative segregation cells were not at full capacity on July 13, 2023. (DN 33-6, PageID.135). One cell housed a sex offender, whose classification prohibited a cellmate, and the other cell (503) was occupied by Plaintiff. (*Id.*). Plaintiff's cell was therefore the only available administrative segregation cell to house Moore. (*Id.*). Deno avers that he was instructed by Lanham to transport Moore to cell 503. (DN 33-7, PageID.138). Plaintiff and Moore were not designated as "keep-aparts." (*Id.*). Deno states that there was no indication that the two inmates knew one another, and Moore had no previous altercations with other inmates. (*Id.*).

Plaintiff does not refute these facts, but instead avers that cell 503 is designed to hold only a single inmate. (DN 35-1, PageID.173). However, this bare assertion lacks evidentiary support and is insufficient to overcome a motion for summary judgment. *See Jones*, 677 F. App'x at 282 ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") (citation omitted).

---

[1] Indeed, absent Defendants' knowledge that Plaintiff lodged the verbal complaint to Major Payne, Plaintiff's retaliation claim would rest upon his allegations of his mere "propensity to file complaints, grievances, and lawsuits," which is too conclusory to state a viable retaliation claim. (DN 35-1, PageID.172). *See Johnson v. Long-Azbell*, No. 1:18-CV-367, 2018 WL 3653201, at *4 (S.D. Ohio June 25, 2018), *report and recommendation adopted*, No. 1:18-CV-367, 2018 WL 3642846 (S.D. Ohio Aug. 1, 2018) (dismissing claim at initial screening where plaintiff alleged retaliation "due to [plaintiff's] past history of filing grievances").

Defendants have therefore shown that, absent any retaliatory intentions, Moore would have been transferred into the cell anyway. *See Cooper v. Bower*, No. 5:15-CV-249-TBR, 2017 WL 4682725, at *7 (W.D. Ky. Oct. 17, 2017) (granting summary judgment based on retaliatory transfer where defendants carried burden of showing that plaintiff's transfer would have occurred but for retaliatory intentions) (citing *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (explaining that, even "after a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity")).

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences, Plaintiff has failed to produce evidence from which a jury could reasonably determine that the assignment of Moore into Plaintiff's cell was in retaliation for his protected conduct. Accordingly, Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim is granted.

**B.**

Plaintiff's complaint alleges that Defendants were "deliberately indifferent" to Plaintiff's safety and security when they ignored Moore's threats that there would be a problem if he were to be housed in cell 503, and that Moore ultimately attacked Plaintiff resulting in injury. (DN 1, PageID.7).

Defendants move for summary judgment on the basis that Plaintiff fails establish the requisite elements to state a failure-to-protect claim under the Fourteenth Amendment. (DN 33-1, PageID.127-129).

"Under § 1983, a pretrial detainee can seek relief against officers who are deliberately indifferent to a significant risk of harm." *Reece v. Carey*, No. 22-5275, 2023 WL 3003191, at *4

(6th Cir. Apr. 19, 2023). "Under our post-*Kingsley v. Hendrickson*, 576 U.S. 389 (2015), analysis, we employ a four-prong test to assess pretrial detainee failure-to-protect claims." *Reece*, 2023 WL 3003191, at *4.

> "Under that test, an officer violates the Fourteenth Amendment when (1) he acts intentionally 'with respect to the conditions under which the plaintiff was confined,' (2) those conditions 'put the plaintiff at substantial risk' of harm, (3) he does not take reasonable steps to abate that risk, and (4) by failing to do so he actually causes the plaintiff's injuries."

*Id.* (quoting *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 729 (6th Cir. 2022)

Defendants acknowledge that they intentionally placed Moore into cell 503 where Plaintiff was housed but argue that Plaintiff fails to establish the three remaining elements of his failure-to-protect claim, namely: substantial risk of serious harm, failure to take reasonable measures, and causation. (DN 33-1, PageID.128-129).

With regard to the element of substantial risk, Defendants present evidence that Moore had not been involved in any altercations with Plaintiff, or other inmates, since Moore was booked into HCDC. Additionally, there is no indication of prior animosity between Plaintiff and Moore or that they knew one another. Plaintiff does not controvert this evidence, which leads to the conclusion that Plaintiff was not subject to conditions posing a substantial risk of serious harm. *Compare Reedy v. West*, 988 F.3d 907, 913 (6th Cir. 2021) ("Prior to the assault, there is no evidence that Hensley ever harmed Reedy. Nor is there evidence Hensley had a violent criminal history or was ever involved in a physical altercation in prison."), *with Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (finding the objective element satisfied because documents from plaintiff's cell were used to prosecute an Aryan Brotherhood member for murder, plaintiff received a death threat bearing the gang's symbol, the gang had taken a hit out on him, and members of the gang previously "broke [plaintiff's] face" and attempted to stab him at a different prison).

15

As discussed above, Plaintiff's assertions that state and federal inmates are to be segregated from one another are conclusory and lack record support. Plaintiff does not expound upon the danger presented by housing state and federal inmates together, other than that there is a "protocol" at HCDC which prohibits such inmates being housed together. (DN 35-1, PageID.173). As stated earlier, Plaintiff presents no evidence of said protocol. There is therefore no evidence that there was a threat of violence against him by state inmates such to give rise to a substantial risk of serious harm. *See Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001) (affirming dismissal of prisoner's failure-to-protect claim where plaintiff alleged no more than a "hypothetical" risk of danger); *see also, e.g.*, *Basham v. Burns*, No. 4:17-CV-P156-JHM, 2018 WL 4775508, at *2 (W.D. Ky. Oct. 3, 2018) (dismissing Eighth Amendment claim for failure to allege a substantial risk of harm where the plaintiff claimed he was attacked because he, a "county inmate," was wrongfully housed with a "state inmate," but made "no allegation that there was any warning or threat of violence against him by state inmates or that he or other county inmates had been the subject of assaults by state inmates in the past").

In light of the undisputed facts that there was no history of violence between Plaintiff and Moore, that Moore had no history of violence while at HCDC, and Plaintiff did not object to Moore's placement at the time of his transfer in to cell 503, Moore's purported warnings that "there was going to be a problem . . . with an inmate wearing yellow," prior to being placed into cell 503, *see* DN 35, PageID.174, is insufficient to create a genuine dispute as to the substantial risk element. *See Reedy,* 988 F.3d at 913 (holding cellmate's statement to defendants that "'[y]ou guys got to move this motherfucker out of my cell' or 'whatever happens . . . is going to be onto [you],' does not create an objective, substantial risk of harm. If it did, a prison official would be obligated to move any inmate that uses profanity and threatens that something might happen if his demands for

16

a cell change are not met."); *see also, e.g.*, *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-CV-337, 2023 WL 3437198, at *3 (S.D. Ohio May 12, 2023), *report and recommendation adopted*, No. 1:22-CV-337, 2023 WL 4348835 (S.D. Ohio July 5, 2023) ("While general disagreements or unsupported idle threats, without more, are insufficient to establish a substantial risk of serious harm, knowledge that an inmate intends to seriously assault another inmate can be enough to satisfy the objective component.").

Plaintiff does not directly refute the timeline set forth by Defendants that the attack took place approximately 20-30 minutes after placing Moore into cell 503. Rather, Plaintiff states "within mere minutes of slamming shut the door to cell 503, I was literally killed by this county/state inmate in green, [Moore]." (DN 35-1, PageID.176). Mindful of the Court's obligation to construe facts and inferences in Plaintiff's favor and not to weigh evidence at this juncture, the Court is not required to accept Plaintiff's implausible version of events in order to survive summary judgment. "For instance, where self-serving testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020). In this regard, Plaintiff does not allege, much less provide any evidence, that during the time in which Moore was present in the cell with Plaintiff, that Plaintiff alerted officers regarding the threat posed by Moore, requested to be moved, or otherwise vocalized his fear of being housed with Moore. Aside from the purported warnings made by Moore immediately before entering cell 503, Plaintiff does not provide any other facts or evidence that would establish his placement with a state inmate created a substantial risk that said inmate would attack him. *See Williamson v. Inman*, No. 1:16-0041, 2017 WL 1164571, at *4 (M.D. Tenn. Mar. 29, 2017), *report and recommendation adopted*, No. 1:16-CV-00041, 2017 WL 1425493 (M.D. Tenn. Apr. 21, 2017)

17

("[T]he Court finds that, under the facts of the instant lawsuit, the absence of any evidence from Plaintiff that he perceived a risk to his safety and made that risk known to [Defendant] is significant" with respect to substantial risk of serious injury.).

With respect to the third element, failure to take reasonable measures, Plaintiff must show that the officer "was more than merely negligent; the officer must have acted with 'reckless disregard' in the face of 'an unjustifiably high risk of harm.'" *Westmoreland*, 29 F.4th at 730 (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)).

Defendants present evidence that, after Moore expressed reluctance in transferring into cell 503, he was asked multiple times whether he would hurt himself or anyone else, and Moore answered in the negative. Lanham and Deno proceeded to place Moore in the only cell that was available at the time after Moore made these acknowledgements. Taken as true Moore's verbal warnings that "there was going to be a problem . . . with an inmate in yellow," Defendants took steps to abate any risk prior to Moore's placement. *See Stein v. Gunkel*, 43 F.4th 633, 640 (6th Cir. 2022) (defendant-deputy's actions in placing a violent cellmate with the plaintiff, who was subsequently assaulted, was at most negligence).

Under the facts of this case, there is no basis to conclude that Defendants recklessly disregarded an unjustifiably high risk of harm to Plaintiff. At most, Plaintiff has established that Defendants acted negligently in placing Moore into his cell, and negligent harm is not actionable. *See Stein*, 43 F.4th at 639 (observing that the third element of a failure-to-protect claim "requires more than negligence").

"The fourth element is whether the defendant caused the plaintiff's injuries by not taking reasonable measures." *Westmoreland*, 29 F.4th at 730. Because Plaintiff has not established that

18

Defendants failed to take reasonable measures prior to placing Moore into Plaintiff's cell, he cannot establish the causation element of his Fourteenth Amendment failure-to-protect claim.

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences, Plaintiff has failed to produce evidence from which a jury could reasonably determine that Defendants acted with reckless disregard in the face of an unjustifiably high risk of harm with respect to Moore's cell transfer.

Accordingly, Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment failure-to-protect claim is granted.

**V.**

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 33) is **GRANTED**.  The Court will enter a separate Judgment dismissing the action.

Date:   July 17, 2024

*Joseph H. McKinley Jr.*
Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.015